ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI (DJ 2025-063B)

| DAGMARY PURCELL ARÉVALO, <br><br> Peticionaria, <br><br> v. <br><br> JUAN EDUARDO CORTÉS, <br><br> Recurrida. | TA2026CE00783 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan. <br><br> Civil núm.: SJ2025RF01124. <br><br> Sobre: divorcio. |
|---|---|---|

Panel integrado por su presidenta, la jueza Romero García, el juez Monge Gómez y la jueza Prats Palerm.

Romero García, jueza ponente.

RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de junio de 2026.

Mediante este recurso, la parte peticionaria, señora Dagmary Purcell Arévalo (señora Purcell), solicita que este Tribunal revoque la *Resolución y Orden* emitida el 28 de mayo de 2026[1], por el Tribunal de Primera Instancia, Sala Superior de San Juan, en la que este acogió las recomendaciones del *Informe Social Forense* y estableció un plan de custodia compartida.

Examinada la petición y sus anejos, la regrabación de las vistas evidenciarias celebradas por el foro primario, así como la oposición de la parte recurrida, este Tribunal deniega la expedición del auto.

I

El 7 de agosto de 2025, la señora Purcell presentó una petición de divorcio por la causal de ruptura irreparable, en contra de su esposo, el señor Juan Eduardo Cortés (señor Cortés)[2]. El 11 de septiembre de 2025, el señor Juan Eduardo Cortés presentó su *Contestación a Demanda y Reconvención*[3]. En esta, el señor Cortés solicitó la custodia compartida de la menor N.M.C.P.

El 29 de septiembre de 2025, la señora Purcell presentó una réplica a la reconvención[4].

---

[1] Notificada el 28 de mayo de 2026.

[2] Entrada 1 del *Sistema Unificado de Manejo y Administración de Casos* del Tribunal de Primera Instancia (SUMAC TPI).

[3] Entrada 20 SUMAC TPI.

[4] Entrada 29 SUMAC TPI.

El 1 de octubre de 2025, el foro recurrido celebró la vista de divorcio. En la vista y, luego, en su sentencia, el tribunal hizo constar que emitiría una orden provisional de custodia compartida en tanto se refería el caso a la Unidad de Trabajo Social y se completaba el *Informe Social Forense* (Informe)[5].

El 9 de octubre de 2025, el tribunal refirió el asunto a la Unidad de Trabajo Social[6]. En igual fecha, el foro primario emitió una *Orden* en la cual dispuso que, durante la preparación del estudio social, la menor N.M.C.P. no podría pernoctar en la propiedad de su padre mientras el hermano paterno de la menor estuviera allí[7].

Tras varias incidencias procesales, el 23 de enero de 2026, la trabajadora social, señora Jenniffer Mercado Oyola, presentó su Informe[8]. En síntesis, la trabajadora social recomendó que la custodia de la menor fuera otorgada de manera compartida a ambos progenitores[9].

El 26 de enero de 2026, notificada el 28 de enero de 2026, el tribunal ordenó a las partes litigantes que informaran su posición respecto al Informe en un término de quince días[10].

Conforme a lo ordenado, el 2 de febrero de 2026, la señora Purcell informó que pretendía impugnar el Informe[11]. Por su parte, el señor Cortés presentó una moción en la que hizo constar que coincidía plenamente con las conclusiones y recomendaciones de la trabajadora social[12], por lo que se allanaba a la custodia compartida.

---

[5] Entrada 39 SUMAC TPI, *Minuta* de la vista celebrada de manera presencial el 1 de octubre de 2025. El 1 de octubre de 2025, el Tribunal de Primera Instancia emitió la *Sentencia* mediante la cual decretaba el divorcio. *Véase*, Entradas 34 y 43 SUMAC TPI.

[6] Entrada 32 SUMAC TPI.

[7] Entrada 33 SUMAC TPI.

[8] Entrada 59 SUMAC TPI.

[9] Íd., *Informe Social Forense*, a las págs. 18-20.

[10] Entrada 60 SUMAC TPI.

[11] Entrada 62 SUMAC TPI.

[12] Entrada 63 SUMAC TPI.

Así las cosas, el 6 de febrero de 2026, el foro primario emitió una *Orden* en la que dispuso que celebraría la vista evidenciara para la impugnación del Informe el 13, 14 y 19 de mayo de 2026[13].

Posteriormente a la celebración de las vistas, el 28 de mayo de 2026, el Tribunal de Primera Instancia emitió su detallada *Resolución y Orden* en la que, luego de evaluar las recomendaciones del Informe, la prueba desfilada ante sí y el derecho aplicable, estableció un plan de custodia compartida[14].

Inconforme, el 18 de junio de 2026, la señora Purcell presentó este recurso discrecional de *certiorari*, a través del cual formuló los siguientes señalamientos de error:

**ERROR NÚM. 1**. – EL TRIBUNAL DE PRIMERA INSTANCIA INCURRIÓ EN ERROR DE DERECHO Y ABUSO DE DISCRECIÓN AL ADOPTAR EL INFORME SOCIAL FORENSE COMO FUNDAMENTO DETERMINANTE PARA ADJUDICAR CUSTODIA COMPARTIDA, AUN CUANDO SUS PROPIAS DETERMINACIONES DE HECHOS ACREDITAN FALLAS METODOLÓGICAS, OMISIONES SUSTANCIALES, INCONSISTENCIAS Y AUSENCIA DE VERIFICACIÓN QUE HACEN AL INFORME INHERENTEMENTE NO CONFIABLE CONTRARIO A LA LEY 223 Y LAS REGLAS DE EVIDENCIA.

**ERROR NÚM. 2**. – EL TRIBUNAL DE PRIMERA INSTANCIA INCURRIÓ EN APRECIACIÓN IRRACIONAL DE LA PRUEBA AL IGNORAR EVIDENCIA SUSTANCIAL SOBRE INCIDENTES DE RIESGO ENTRE LA MENOR Y EL HERMANO PATERNO, AL OMITIR EVALUAR LOS FACTORES OBLIGATORIOS DEL ARTÍCULO 9 DE LA LEY 223, Y AL DESCARTAR SIN FUNDAMENTO RACIONAL EL TESTIMONIO DE LA DEMANDANTE.

**ERROR NÚM. 3**. – EL TRIBUNAL DE PRIMERA INSTANCIA INCURRIÓ EN DETERMINACIONES DE HECHO CLARAMENTE ERRÓNEAS AL CONCLUIR QUE EL PADRE POSEE LA DISPONIBILIDAD, CAPACIDAD Y ESTABILIDAD NECESARIAS PARA EJERCER LA CUSTODIA COMPARTIDA, A PESAR DE QUE LAS PROPIAS DETERMINACIONES DE HECHOS ACREDITAN QUE LA TRABAJADORA SOCIAL NO INVESTIGÓ SU EMPLEO, HORARIOS, OBLIGACIONES, VIAJES, NI SU DISPONIBILIDAD REAL, Y QUE EL INFORME SOCIAL CARECE DE LA VERIFICACIÓN MÍNIMA REQUERIDA PARA SOSTENER ESA CONCLUSIÓN.

**ERROR NÚM. 4**. – EL TRIBUNAL DE PRIMERA INSTANCIA INCURRIÓ EN FALTA DE MOTIVACIÓN ADECUADA AL NO EXPONER LAS RAZONES QUE SUSTENTAN SU DECISIÓN, AL OMITIR ANALIZAR LOS FACTORES OBLIGATORIOS DEL ARTÍCULO 9 DE LA LEY 223, AL NO EXPLICAR POR QUÉ ADOPTÓ UN INFORME SOCIAL METODOLÓGICAMENTE DEFECTUOSO, Y AL NO FUNDAMENTAR SU CONCLUSIÓN

---

[13] Entrada 67 SUMAC TPI.

[14] Entrada 127 SUMAC TPI.

SOBRE LA DISPONIBILIDAD, CAPACIDAD Y SEGURIDAD DEL PADRE PARA EJERCER CUSTODIA COMPARTIDA.

**ERROR NÚM. 5**. – EL TRIBUNAL DE PRIMERA INSTANCIA INCURRIÓ EN PASIÓN, PREJUICIO Y PARCIALIDAD, LO QUE INVALIDA SU DETERMINACIÓN Y JUSTIFICA LA REASIGNACIÓN DEL CASO A OTRO MAGISTRADO CONFORME A LO RESUELTO EN *DÁVILA NIEVES V. MELÉNDEZ MARÍN*, 187 DPR 750 (2013).

(Mayúsculas y énfasis en el original).

En igual fecha, 18 de junio de 2026, la señora Purcell presentó una solicitud en auxilio de jurisdicción[15]. El lunes, 22 de junio de 2026, emitimos una *Resolución* mediante la cual denegamos dicha solicitud y concedimos un término a la parte recurrida para presentar su oposición a la expedición del recurso.

El 26 de junio de 2026, la señora Purcell solicitó la reconsideración de nuestra denegatoria del auxilio de jurisdicción, la cual fue declarada sin lugar en esa misma fecha.

El 28 de junio de 2026, el señor Cortés presentó su memorando en oposición a la expedición del auto.

Examinados los escritos de las partes litigantes, así como el dictamen recurrido, resolvemos.

II

A

El Tribunal Supremo de Puerto Rico ha consignado que los asuntos de familia son, de ordinario, complicados, pues las controversias envuelven emociones y sentimientos profundos. *Machargo Olivella v. Martínez Schmidt*, 188 DPR 404, 414 (2013). Por esta peculiaridad, los casos de familia están permeados del más alto interés público. *Otero Vélez v. Schroder Muñoz*, 200 DPR 76, 85 (2018). Por tanto, particularmente en los casos que envuelven determinaciones de custodia, el norte del juzgador debe ser el bienestar y los mejores intereses del menor; ello, en virtud de la facultad de *parens patriae* del

---

[15] La parte peticionaria presentó su solicitud de auxilio de jurisdicción el jueves, 18 de junio de 2026, a las 5:01 p.m., fuera de horas laborables. El viernes, 19 de junio de 2026, fue día feriado oficial. *Véase*, Entrada 2 SUMAC TA.

Estado. *Íd.*, a la pág. 86. Véase, además, *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645, 651 (2016).

Por otra parte, los dictámenes sobre custodia nunca deben ser finales y definitivos; estarán sujetos a cambios, según varíen las circunstancias de los menores. *Otero Vélez v. Schroder Muñoz*, 200 DPR, a la pág. 86. Es importante, además, que el juzgador, al tomar determinaciones de este tipo, tenga el beneficio del insumo de ambas partes; "una decisión de esa naturaleza no puede ser el producto del capricho y la improvisación". *Santana Medrano v. Acevedo Osorio,* 116 DPR 298, 302 (1985). El Tribunal Supremo también ha expresado que, al enfrentarse a un litigio en el que se dilucida la custodia, patria potestad o las relaciones paternofiliales de un menor, los tribunales no podemos actuar livianamente. *Pena v. Pena*, 164 DPR 949, 959 (2005).

Así pues, al hacer una determinación sobre la custodia de un menor, el tribunal deberá examinar varios factores[16]. Además, podrá ordenar la comparecencia de aquellas personas que puedan ayudarle en el descargo de su función de *parens patriae*. *Muñoz Sánchez v. Báez de Jesús*, 195 DPR, a la pág. 652. "Esta responsabilidad incluye, a su vez, la potestad de ordenar las investigaciones de índole social que el tribunal entienda procedentes". *Íd.*

B

El Art. 7 de la Ley Núm. 223-2011, según enmendada, conocida como la *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia*, 32 LPRA sec. 3181, dispone que, al considerar una solicitud de custodia en la que surjan controversias entre los progenitores en cuanto a esta, el tribunal referirá el caso a un(a) profesional del trabajo social de la Unidad de Relaciones de Familia, quien realizará una evaluación y rendirá un informe con recomendaciones al tribunal. 32 LPRA sec. 3185. No obstante, las recomendaciones sobre custodia que emitan los y las profesionales del trabajo

---

[16] Entre esos factores, deberá examinarse "la preferencia del menor, su sexo, su edad, salud mental y física; el cariño que las partes podrían brindarle; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste de éste al hogar, la escuela y la comunidad en que vive; su interrelación con las partes, sus hermanos y otros miembros de la familia, y la salud psíquica de todas las partes, entre otros". *Muñoz Sánchez v. Báez de Jesús*, 195 DPR, a la pág. 651.

social no serán los únicos factores a ser considerados por el tribunal. Art. 8 de la Ley Núm. 223-2011, 32 LPRA sec. 3186.

A tales efectos, tanto los y las profesionales del trabajo social, al hacer su evaluación, como el tribunal, al emitir su determinación, tomarán en consideración una serie de criterios enumerados en dicha ley[17]. Art. 7 de la Ley Núm. 223-2011, 32 LPRA sec. 3185. Cónsono con lo anterior, la recomendación sobre custodia, así como la determinación del tribunal deberán tener como propósito garantizar el mejor bienestar de los y las menores. Art. 8 de la Ley Núm. 223-2011, 32 LPRA sec. 3186. Así pues, se considerará la custodia compartida como primera opción, en la medida en que ello represente el mejor bienestar de las(os) menores. *Íd.*

En lo pertinente, la evaluación social forense se conoce como un proceso de análisis que realizan los y las profesionales del trabajo social adiestrados en los casos de familia y asuntos de menores, con el fin de ilustrar al juez(a) en cuanto a la controversia que le fuera referida. *Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores*, Oficina de Administración de los Tribunales, de 10 de enero 2024, a la pág. 8. Dicha evaluación debe reflejar de forma objetiva y científica la personalidad del individuo y el entorno familiar. *Íd.* En este sentido, el informe social forense es el "producto final del proceso de evaluación donde se atiende la controversia referida por el Tribunal, se ofrecen recomendaciones sobre la controversia y se destacan todas las áreas evaluadas, la fuente de datos, e integra el conocimiento teórico o razonamiento que fundamenta las recomendaciones". *Íd.*, a la pág. 10.

C

Es norma reiterada que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba de los tribunales de primera instancia. *Rodríguez v. Urban Brands*, 167 DPR 509, 522 (2006). Al definir lo que constituye pasión, perjuicio o parcialidad, el Tribunal Supremo ha expresado que:

---

[17] Véase el dictamen recurrido, a las págs. 28-29.

> Incurre en "pasión, prejuicio o parcialidad" aquel juzgador que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.

*Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

La deferencia hacia el foro primario responde a que es el juez sentenciador el que tiene la oportunidad de recibir y apreciar toda la prueba testifical presentada, de escuchar la declaración de los testigos y evaluar su comportamiento. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009).

Sin embargo, la doctrina de deferencia judicial no es de carácter absoluto; se podrá intervenir "cuando la apreciación de la prueba no representare el balance más racional, justiciero y jurídico de la totalidad de la prueba". *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).

También, se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos estamos en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *Íd.* En esa línea, como es sabido, el valor probatorio del testimonio pericial está subordinado al análisis de determinados factores, tales como: "(1) las cualificaciones del perito; (2) la solidez de las bases de su testimonio; (3) la confiabilidad de la ciencia o técnica subyacente; y, (4) la parcialidad del perito". *Díaz v. Pneumatics & Hydraulics*, 169 DPR 273, 295 (2006).

III

Este foro revisor ha examinado el tracto procesal del caso, la regrabación de las vistas celebradas el 13, 14 y 19 de mayo de 2026, así como los argumentos planteados por las partes comparecientes. De tal examen surge que, en este caso, la prueba pericial consistió en el testimonio experto de la señora Jenniffer Mercado Oyola, trabajadora social, y del Dr. Fernando Medina Martínez, psicólogo forense y perito de la parte peticionaria. Además, testificó la señora Purcell.

Luego de haber aquilatado la prueba desfilada antes sí, el 28 de mayo de 2026, el foro recurrido emitió su *Resolución y Orden*, en la cual acogió las recomendaciones del *Informe Social Forense* y estableció un plan de custodia compartida.

En cuanto al contenido de la vista, destacamos que la señora Purcell pretendió enfocar, en más de una ocasión, la controversia del Informe en cuestión sobre el hermano paterno de la menor N.M.C.P. Por ello, el foro primario reiteró en varias ocasiones que el hermano paterno no era el objeto de estudio, sino la menor N.M.C.P.[18], y enfatizó que la controversia consistía en determinar si la custodia de la menor debía ser monoparental o compartida[19].

Recordemos que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, debemos abstenernos de intervenir con la apreciación de la prueba de los tribunales de primera instancia. *Rodríguez v. Urban Brands*, 167 DPR, a la pág. 522. Con ello en mente, concluimos que, contrario a lo planteado por la señora Purcell, no surge indicio alguno de que el foro primario hubiera incurrido en un craso abuso de discreción, o hubiera actuado con prejuicio o parcialidad, o que se hubiera equivocado en la interpretación o aplicación de alguna norma procesal o de derecho sustantivo. A su vez, la señora Purcell tampoco demostró que nuestra intervención en esa etapa evitará un perjuicio sustancial. Por lo tanto, procede denegar la expedición del recurso ante nuestra consideración.

IV

En mérito de lo antes expuesto, este Tribunal deniega la expedición del auto de *certiorari*.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[18] *Véase*, regrabación de la vista del 13 de mayo de 2026, 0:41:06 – 0:41:22.

[19] *Íd.*, 0:41:24 – 0:41:34.